IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

FILED
IN OPEN COURT

FEB - 3 2021

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:21-CR-5 (RDA) |
| v. | Count 1: 18 U.S.C. § 1001 (False Statements) |
| ROBERT S. STEWART, JR., | Count 2: 18 U.S.C. § 1343 (Wire Fraud) |
| Defendant. | Count 3: 18 U.S.C. § 641 (Theft of Government Funds) |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES THAT:

**Introductory Allegations**

1. At all times relevant to this Criminal Information:

   A. ROBERT S. STEWART, JR. was a resident of Arlington, Virginia and the Chief Executive Officer and sole owner of Federal Government Experts, LLC. Federal Government Experts, LLC sought and obtained contracts to supply departments and agencies of the United States Government with goods and services, including contracts to provide personal protective equipment to combat the COVID-19 pandemic. Federal Government Experts, LLC (hereinafter "FGE") maintained its principal place of business in Falls Church, Virginia, within the Eastern District of Virginia.

   B. The Department of Veteran's Affairs (hereinafter "the VA") was a department of the United States Government responsible for providing services and benefits to American military veterans and their families. VA benefits included payments for medical expenses and educational services. Within the VA, the Veterans Health Administration operated 1,255 health care facilities and provided health care services to approximately 9 million enrolled

Veterans each year.

  C. The Federal Emergency Management Agency (hereinafter "FEMA"), was a federal agency within the United States Department of Homeland Security. FEMA was responsible for the preparation, coordination, and relief efforts relating to disasters.

  D. The Small Business Administration (hereinafter "the SBA"), was an agency within the United States Government that provided assistance, including financial assistance, to small businesses. The SBA's computer servers which, among other things, receive information about loan applications, are located in the Eastern District of Virginia.

  E. Celtic Bank provided a range of traditional banking services throughout the United States, including in the Eastern District of Virginia, and is a financial institution as defined by Title 18, United States Code, Section 20. Celtic Bank is a participating lender in the federal Paycheck Protection Program.

## Count 1
### (False Statements)

2. From on or about April 1, 2020 to on or about May 14, 2020, in the Eastern District of Virginia and elsewhere, the defendant, ROBERT S. STEWART, Jr., knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to government officials in matters within the jurisdiction of the executive branch of the Government of the United States, namely the acquisition by the VA and FEMA of personal protective equipment, specifically N95 masks, to combat the COVID-19 pandemic.

3. In an effort to obtain lucrative contracts with the United States Government to supply N95 masks to the VA and FEMA, STEWART repeatedly told VA and FEMA procurement officials that STEWART and FGE were in possession of large quantities of N95 masks, knowing then and there that the statements were false because neither STEWART nor FGE had actual or constructive possession of large quantities of N95 masks, and knowing that the false statements were material to the VA and FEMA's decision to award the contracts.

4. Based in material part on STEWART's false representations that he had possession of large quantities of N95 masks, the VA and FEMA awarded STEWART and FGE contracts to supply 6,500,000 N95 masks at a total cost of 38,510,000.

(In violation of Title 18, United States Code, Section 1001(a)(2))

## Count 2
## (Wire Fraud)

5. From on or about March 30, 2020 to in or about July 2020, in the Eastern District of Virginia and elsewhere, the defendant, ROBERT S. STEWART, JR. knowingly devised and intended to devise a scheme and artifice to defraud Celtic Bank and the SBA, and to obtain money and property from Celtic Bank and the SBA by means of materially false and fraudulent pretenses, representations, and promises.

6. STEWART executed this scheme to defraud by making materially false representations on a Paycheck Protection Program loan application submitted to Celtic Bank, and on an Economic Injury Disaster Loan application submitted to the SBA.

*The Paycheck Protection Program*

7. The Paycheck Protection Program ("PPP") was a federal initiative established to provide emergency financial assistance to people suffering the economic effects caused by the COVID-19 pandemic. The PPP provided forgivable loans to small businesses for job retention and certain other expenses.

8. In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. This information was used to determine whether the applicant was eligible for a PPP loan and, if so, to calculate the amount of money the small business was eligible to receive. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

9. A PPP loan application was required to be processed by a participating financial institution (the lender). If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

*The Economic Injury Disaster Loan Program*

10. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

11. The SBA was authorized to provide EIDL loans of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the SBA was authorized to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL loan. The amount of the advance was determined by the number of employees the applicant certified having. The advances did not have to be repaid. An advance could be made before a loan was accepted or declined.

12. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDL loans for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant was also required to certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

13. EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application was approved, was determined based, in material part, on the information provided in the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

### *The Celtic Bank PPP Loan*

14. On or about May 2, 2020, STEWART, acting as the owner and authorized representative of FGE, applied for a PPP loan at Celtic Bank.

15. In the loan application, digitally signed by the defendant, STEWART knowingly falsely and fraudulently stated the following:

   A. That FGE had 37 employees, when, in fact, FGE had 9 employees.

   B. That FGE had and average monthly payroll of $322,000, when, in fact, FGE had an average monthly payroll of $13,907.

16. As an attachment to his loan application, STEWART submitted a false and fraudulent IRS Form 941 (Employer's Quarterly Federal tax Return) to Celtic Bank. The IRS 941 Form was fraudulent in that it falsely stated that during the first quarter of 2020, FGE paid 37 employees a total of $960,000 in wages. STEWART represented that the IRS 941 Form was filed with the IRS when, in fact, it never was. STEWART intended for Celtic Bank to rely on the fraudulent IRS 941 Form to corroborate STEWART's false claims in the PPP loan application regarding the number of FGE employees and FGE's average monthly payroll.

17. Celtic Bank approved FGE's PPP loan application and disbursed $805,000 to FGE. In so doing, Celtic Bank relied on the materially false statements made by STEWAERT in the loan application and the IRS Form 941.

18. On or about July 23, 2020, STEWART repaid Celtic Bank $791,507.95.

*The SBA EIDL Loan*

19. On or about March 30, 2020, STEWART, acting as the owner and authorized representative of FGE, applied for an EIDL loan with the SBA.

20. In the loan application, digitally submitted by the defendant, STEWART knowingly falsely and fraudulently stated the following:

A. FGE's revenues for the 12-month period prior to the date of the disaster were $1,348,000.

B. The amount of goods sold by FGE for the 12-month period prior to the date of the disaster was $825,000.

21. These were materially false statements that significantly overstated FGE's revenues and goods sold.

22. On or about April 14, 2020, the SBA disbursed a $10,000 advance on the EIDL loan to FGE. On or about April 19, 2020, the SBA approved FGE's EIDL loan application, and on or about April 20, 2020, the SBA disbursed an additional $251,500 to FGE. In so doing, the SBA relied on the materially false statements made by STEWART in the loan application. The total amount disbursed by the SBA to FGE was $261,500.

23. STEWART used the EIDL loan proceeds for prohibited purposes, including personal expenses.

24. On or about March 30, 2020, for the purpose of executing the above-described scheme and artifice to defraud, and for the purpose of obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, STEWART knowingly transmitted and caused to be transmitted by means of wire communication in interstate commerce a writing, sign, signal, picture and sound, namely the digital submission of the application by STEWART and FGE for an EIDL loan from the SBA, that originated in the Eastern District of Virginia, was transmitted in interstate commerce, including to SBA computer server, also located in the Eastern District of Virginia.

(In violation of Title 18, United States Code, Section 1343)

## Count 3
### (Theft of Government Funds)

25. From in or about September 2013 to on or about October 30, 2020, in the Eastern District of Virginia and elsewhere, the defendant, ROBERT S. STEWART JR. knowingly and willfully embezzled, stole, purloined, and converted to his own use a record, voucher, money, or thing of value of the United States or any department or agency thereof, namely $73,722.45 from the VA.

(In violation of Title 18, United States Code 641)

## FORFEITURE NOTICE

Defendant ROBERT S. STEWART, JR. is hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the offenses set forth in Count 2 and Count 3 of this Criminal Information, he shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), his interest in any property, real or personal, constituting or derived from proceeds obtained directly or indirectly as a result of these offenses.

The property subject to forfeiture under Count 2 and Count 3 includes, but is not limited to, a sum of money equal to at least $348,714.50 in United States currency, representing the amount of proceeds obtained by STEWART as a result of the offenses.

(All in accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Fed. R. Crim. P. 32.2.)

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By: *William Fitzpatrick*
William Fitzpatrick
Assistant United States Attorney