1

<pre>
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF VIRGINIA
 2                        ALEXANDRIA DIVISION

 3    ------------------------------x
                                    :
 4    UNITED STATES OF AMERICA,     : Criminal Action No.
                                    :
 5              versus              : 1:21-cr-00005
                                    :
 6    ROBERT S. STEWART, JR.,       : February 3, 2021
                                    :
 7                    Defendant.    :
      ------------------------------x
 8

 9         The above-entitled Plea hearing was heard before the
      Honorable Rossie D. Alston, Jr., United States District Judge.

10                    A P P E A R A N C E S

11     FOR THE GOVERNMENT:    WILLIAM E. FITZPATRICK, AUSA
                              United States Attorney's Office
12                            2100 Jamieson Ave
                              Alexandria, VA 22314
13

14     FOR THE DEFENDANT:     ROBERT L. JENKINS, Jr., ESQ.
                              Bynum & Jenkins PLLC
15                            1010 Cameron Street
                              Alexandria, VA 22314
16

17

18
      OFFICIAL U.S. COURT REPORTER:    MS. TONIA M. HARRIS, RPR
19                                     United States District Court
                                       401 Courthouse Square
20                                     Fifth Floor
                                       Alexandria, VA 22314
21

22

23

24

25

                                          Tonia M. Harris OCR-USDC/EDVA 703-646-1438
</pre>

──────United States of America v. Stewart──────

2

1                    **P R O C E E D I N G S**

2    (Court proceedings commenced at 12:33 p.m.)

3           THE DEPUTY CLERK:  Criminal No. 2021-5.  United

4    States of America versus Robert Stewart, Jr.

5           MR. FITZPATRICK:  Good afternoon, Your Honor.

6    William Fitzpatrick on behalf of the United States.

7           THE COURT:  Good afternoon, sir.  Mr. Jenkins, good

8    afternoon, sir.

9           MR. JENKINS:  Good afternoon, again, Your Honor.

10   Robert Jenkins on behalf of the defendant.  May it please the

11   court.

12          THE COURT:  Thank you, sir.  Let the record reflect,

13   Mr. Stewart is also present.

14          Mr. Stewart, it's my understanding from your counsel

15   that it is your desire to enter a plea of guilty here this

16   afternoon.

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  The clerk is going to swear you in and

19   then I'm going to ask you some questions, sir.

20          THE DEFENDANT:  Yes, Your Honor.

21          (Defendant sworn.)

22          THE COURT:  Sir, before accepting your plea of

23   guilty, there are certain questions that I need to ask you.

24   If you do not understand these questions, please feel free to

25   ask either the Court or your counsel.

──Tonia M. Harris OCR-USDC/EDVA 703-646-1438──

EASTERN DISTRICT OF VIRGINIA

────United States of America v. Stewart────
                                                             3

1            What is your full name, sir?

2            THE DEFENDANT:  Robert Stevens Stewart, Jr.

3            THE COURT:  Sir, if you're comfortable, you can

4   remove your mask if you're comfortable.

5            What is your date of birth?

6            THE DEFENDANT:  09/28/85.

7            THE COURT:  How old are you, sir?

8            THE DEFENDANT:  35 years of age.

9            THE COURT:  What is the highest level of education

10  you have completed?

11           THE DEFENDANT:  Masters degree.

12           THE COURT:  Do you have any problems reading,

13  writing, or understanding the English language?

14           THE DEFENDANT:  No, Your Honor.

15           THE COURT:  Are you under the influence of any

16  narcotics or alcohol this afternoon?

17           THE DEFENDANT:  No, Your Honor.

18           THE COURT:  Are you entirely satisfied with the

19  services of your lawyer?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Have you received a copy of the charging

22  documents before being called upon to plea?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Have you discussed the charge and the

25  elements with your lawyer?

─────United States of America v. Stewart─────

4

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Do you fully understand the charges

3    against you?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  Are you the person named in the charging

6    documents?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Have you had enough time to discuss with

9    your lawyer whether you should enter a plea of guilty or not

10   guilty in these cases?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  After these discussions, did you decide

13   for yourself to enter this plea of guilty?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  Are you aware of your right to formally

16   go before a grand jury before being called upon to plea?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  It's my understanding, sir, that you

19   want to waive presentation to the grand jury and waive

20   indictment by the grand jury.

21         THE DEFENDANT:  That is correct, Your Honor.

22         THE COURT:  I have in my hand, sir, a form entitled

23   "Waiver of Indictment," it purports to have your signature

24   thereon, the signature of your attorney, and the signature of

25   the representative of the United States government.

United States of America v. Stewart

5

1                  Did you in fact sign this form?

2                  THE DEFENDANT:  Yes, Your Honor.

3                  THE COURT:  Did you read it before you signed it?

4                  THE DEFENDANT:  Yes, Your Honor.

5                  THE COURT:  And if you had any questions regarding

6      the form, did Mr. Jenkins answer those questions?

7                  THE DEFENDANT:  He did, Your Honor.

8                  THE COURT:  Did you discuss with your lawyer whether

9      you should enter a plea of guilty or not guilty?

10                 THE DEFENDANT:  Yes, Your Honor.

11                 THE COURT:  After these discussions, did you decide

12     for yourself that you wanted to enter this plea of guilty?

13                 THE DEFENDANT:  Yes, Your Honor.

14                 THE COURT:  Are you entering this plea of guilty

15     freely and voluntarily?

16                 THE DEFENDANT:  Yes, Your Honor.

17                 THE COURT:  Are you entering this plea of guilty

18     because you are in fact guilty of the charges?

19                 THE DEFENDANT:  Yes, Your Honor.

20                 THE COURT:  Has your attorney advised you the

21     maximum that the law provides upon conviction of these

22     offenses?

23                 THE DEFENDANT:  Yes, Your Honor.

24                 THE COURT:  It's my understanding, sir, that upon

25     conviction of these offenses, and I'm going to go over them

─────United States of America v. Stewart─────
                                                          6

1    with you with regard to Count 1, that you can serve five years

2    of imprisonment, a fine of $250,000, a special assessment,

3    pursuant to statute and supervised release, for a three-year

4    maximum.

5            Do you understand with regard to the false statement

6    charge that's the maximum that the law provides?

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  Do you understand with regard to Count

9    2, wire fraud, that is 20 years of imprisonment, a fine of

10   $250,000 or not more than the greater or twice the gross gain

11   derived by a person from the offense or twice the gross loss

12   to a person other than the defendant resulting from the

13   offense?

14           Do you understand that, sir?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  Do you also know that you could be

17   required to pay restitution?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  And that there is massive forfeiture.

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  And also a special assessment and

22   supervised release, again, for a maximum of three years?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Do you understand, with regard to Count

25   3 of the indictment, theft of government funds, that you can

1    serve ten years of imprisonment, again, a fine of $250,000 or

2    not more than the greater or twice the gross gain derived by

3    the person from the offense or twice the gross loss to a

4    person other than the defendant resulting from the offense.

5              Do you understand that, sir?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Do you understand, again, that you can

8    be required to pay restitution?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  And that you can have a forfeiture of

11   assets?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  And that you can pay a special

14   assessment, in this case up to $100.

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  And, again, supervised release for a

17   maximum of three years?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Do you understand that that is the

20   aggregate of the charges and the maximum punishment that can

21   be provided in the case if the Court deemed it appropriate.

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  Do you understand by entering this plea

24   of guilty you waive certain constitutional rights.  Let me go

25   over those rights with you.

─────United States of America v. Stewart─────

8

1          Do you understand that you waive your right to a

2    trial by jury?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Do you understand that you waive your

5    right not to speak against yourself?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Do you understand you waive the right to

8    challenge or confront and cross-examine your accusers?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you understand that you waive your

11    right to defend yourself?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Do you understand that you also waive

14    your right to have the court subpoena witnesses on your behalf

15    who may testify in support of your case?

16          Do you understand that you also waive that right?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And you also understand, sir, by

19    entering this plea of guilty, you waive certain appeal rights.

20    Let me go over those with you.

21          You waive your right to appeal the determination of

22    guilt, but you do not waive your right under limited

23    circumstances to appeal the determination of what the

24    appropriate sentence is in this case if the Court does not

25    adhere to the requirements of the 3553(a) factors.

United States of America v. Stewart

9

1            Do you understand that, sir?

2            THE DEFENDANT:  Yes, Your Honor.

3            THE COURT:  Do you understand, sir, that you signed

4   a form that's called Notice of Right to Appeal Sentences Under

5   Limited Circumstances?  It purports to have your signature

6   thereon and the signature of your attorney.

7            Did you, in fact, sign this form?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Did you read it before you signed it?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  And if you had any questions regarding

12  that form, did Mr. Jenkins answer those questions?

13           MR. JENKINS:  Yes, Your Honor.

14           THE COURT:  I'll direct that the notice of right to

15  appeal sentence under limited circumstances be made a part of

16  the record in this case.

17           Mr. Jenkins, I'm going to, with your permission,

18  interlineate your client's name here in the captioned section.

19  It's after "signature," but I want to make sure that you're

20  fine with that, sir.

21           MR. JENKINS:  Yes, Your Honor.

22           THE COURT:  Very good.  The Court will interlineate

23  the Robert S. Stewart, Jr. on the form and direct that that,

24  along with the waiver of indictment, be made a part of the

25  record in this matter.

─────United States of America v. Stewart─────

10

1           Sir, I understand that you and the government have

2    entered into a plea agreement in this matter?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  I have in my hand a document entitled,

5    "Plea Agreement."  Again, it purports to have your signature

6    thereon, the signature of your attorney, and the signature of

7    the representative of the United States government.

8           Did you, in fact, sign this, sir?

9           THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Did you read it before you signed it?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  And, again, if you had any questions

13   regarding this plea agreement, Mr. Jenkins answered those

14   questions for you?

15          THE DEFENDANT:  Yes.

16          THE COURT:  I'll direct that the plea agreement be

17   made a part of record in this matter.

18          I'll also ask the government, at this point, to put

19   on a prima facie case.  You may have a seat, sir.

20          MR. FITZPATRICK:  Yes, Your Honor.

21          As the Court knows, Counsel and Mr. Stewart filed or

22   signed and submitted to Your Honor a lengthy Statement of

23   Facts.  And if the Court will permit, I'll just summarize the

24   facts that support each essential element for each of the

25   three counts.

─────United States of America v. Stewart─────

11

1          THE COURT:  Without objection, Mr. Jenkins?

2          MR. JENKINS:  No objection, Your Honor.

3          THE COURT:  Thank you, sir.

4          MR. FITZPATRICK:  Your Honor, with respect to Count

5     1 and Count 2, Mr. Stewart was the CEO and sole owner of

6     Federal Government Experts, a company based in Falls Church,

7     Virginia within the Eastern District of Virginia, that would

8     provide various services to various government entities.

9          Between April 1, 2020 and May 14, 2020, Mr. Stewart

10    made materially false representations to the VA and to FEMA in

11    order to -- in order to be awarded a very lucrative contract

12    to provide PPE, Personal Protective Equipment, in particular,

13    N95 masks, to the VA and to FEMA.  Because FEMA and the VA

14    were acquiring these masks to be provided to -- in furtherance

15    of their missions, these are matters within the executive

16    branch of the United States government as required by statute.

17         Specifically, the false statements, as set forth in

18    greater detail in the Statement of Facts that Mr. Stewart made

19    to procurement officials at FEMA and at the VA, were that he

20    had -- he had large quantities of N95 masks and other PPE on

21    hand, that he had possession of these materials and was ready

22    to convey them to the government in fulfillment of the

23    contract.  At the time Mr. Stewart made these statements, he

24    well knew that he did not have actual or constructive

25    possession of large quantities of these masks.

United States of America v. Stewart

12

1        Based on Mr. Stewart's false representations to the

2   procurement officials, both the VA and FEMA awarded

3   Mr. Stewart and FGE various contracts to provide these

4   materials.  Specifically, the contracts in total, with respect

5   to both the VA contract and the FEMA contract, called for a

6   total of 6,000,500 N95 masks and for FGE to be paid a total of

7   $38,510,000.

8        Mr. Stewart was, obviously, didn't have possession

9   of the masks.  He attempted to acquire possession of the

10   masks, he was unable to do it, he was unable to provide those

11   masks to the government, and --

12        THE COURT:  It was unclear in the Statement of

13   Facts, did he actually get paid this money?

14        MR. FITZPATRICK:  I'm sorry, Your Honor, I was just

15   going to make that point.  No, Your Honor.

16        The contract called for payment upon delivery and

17   inspection.  Because Mr. Stewart never delivered the masks, he

18   was never paid.  So that's just what the contract called for,

19   but there's no actual loss to the federal government with

20   respect to Count 1.

21        I would note, however, Your Honor, that even though

22   there was no actual loss to the government, the way the

23   procurement process works is, once that money -- once that

24   contract is entered into, that money is frozen.

25        THE COURT:  It's earmarked for that particular

─────United States of America v. Stewart─────

13

1    purpose and no one can access it for other purposes.

2          MR. FITZPATRICK:  Exactly, Your Honor.  Yes.  So it

3    did impact the procurement process, but there was no actual

4    loss to the federal government.

5          The false statements, obviously, were communicated

6    from Mr. Stewart's business in Falls Church and/or from his

7    residence in Arlington County, Virginia, but that's the video

8    venue the false statements were made from the Eastern District

9    of Virginia.

10         Count 2, as the Court noted, is an allegation of

11   wire fraud in violation of Title 18 United States Code Section

12   1343.  The wire fraud scheme revolves around false statements

13   that Mr. Stewart made in applications for loans.  One loan was

14   from Celtic Bank and it was backed by the federal government

15   and, in particular, the Small Business Administration.  That

16   loan was part of a government program legislated through the

17   CARES Act, known as the Payroll Protection Program.  And that

18   program was designed to provide money, essentially, to be a

19   lifeline to struggling businesses impacted by the COVID-19

20   pandemic, and to allow businesses to pay for a very limited or

21   use money for very limited purposes:  To make payroll, to pay

22   interest on a mortgage, to pay for their employees'

23   healthcare.

24         THE COURT:  There is a suggestion in the Statement

25   of Facts that this gentleman alleged that he had in excess of

—————United States of America v. Stewart—————

14

1  30 employees when in fact he only had seven, eight, or nine or

2  something.

3          MR. FITZPATRICK:  Precisely, Your Honor.  And there

4  was a second loan there as well based on the Economic Injury

5  Disaster Loan program for essentially -- which is strictly

6  from the Small Business Administration.  But the materially

7  false statements on the loan applications were precisely that,

8  that FGE had more employees than it really did, had a larger

9  payroll than it really did, and those were material facts that

10  were important in not only awarding both the PPP loan, but

11  also the EIDL loan.  Those were two factors that determined

12  whether or not a company was eligible to receive the loan in

13  the first place, and, if so, what the -- the amount of loan

14  that was to be given.

15          THE COURT:  And contrary to the loans that were --

16  the financial circumstances associated with the N95 masks, I'm

17  assuming that he actually received that money.

18          MR. FITZPATRICK:  He did, Your Honor.  So the

19  specific amount was --

20          THE COURT:  $330,000 or something like that.

21          MR. FITZPATRICK:  Yes, Your Honor.  So with respect

22  to the PPP loan, Mr. Stewart received a total of $805,000 as

23  set forth in the Statement of Facts, but Mr. Stewart was able

24  to repay $791,507.  So with respect to the PPP loan, the

25  actual loss amount is rather small.

─────────United States of America v. Stewart─────────

15

1         The EIDL loan that was -- that was dispersed in

2    March, there was a total of $261,500 that was dispersed to

3    Mr. Stewart and to FGE.  None of that money has been repaid.

4    So the loss amount, the restitution amount, is just being

5    driven by the actual loss.

6         THE COURT:  Pursuant to the government's

7    investigation in this matter, were you able to discern what

8    Mr. Stewart spent this money on.

9         MR. FITZPATRICK:  Various things.  Some of the money

10   was spent for personal purposes.  Some of the money was traced

11   to pay off personal credit cards, things of that nature.  Some

12   of the money was spent to, essentially, try to acquire the PPP

13   and -- I'm sorry the PPE, the N95 masks, to comply with the or

14   to satisfy the earlier contracts.

15        THE COURT:  Did he ever use any of the money to pay

16   the employees who were part of his staff?

17        MR. FITZPATRICK:  I believe some.  Some of the money

18   went to pay employees.  A good amount of the money went to pay

19   himself, which is not consistent with both the letter or the

20   intent of the loan documents.  It was to pay his employees,

21   not to pay himself, and, I believe, approximately -- we'll

22   certainly provide all of this information to pretrial, but I

23   believe it's about $60,000 went to Mr. Stewart as payroll to

24   himself.  But Mr. Stewart did things, for example, like he

25   rented an airplane to fly to the Midwest in an effort to try

———————United States of America v. Stewart———————

16

1    to make contacts there, to gain -- to acquire PPE to satisfy

2    the contracts with FEMA and the VA.  So there was definitely

3    some extravagant spending, and certainly spending that was

4    inconsistent with the four corners of what that money was

5    intended to be used for.

6            One other point I would make, Your Honor, is,

7    obviously, as part of the elements of the wire fraud that

8    Mr. Stewart did digitally submit the application for the EIDL

9    loan to the Small Business Administration from EDVA.  The

10   Small Business Administration servers are located in the EDVA,

11   so that wire --

12           THE COURT:  Which provides predicate for the

13   jurisdiction of this --

14           MR. FITZPATRICK:  Yes, Your Honor.  Precisely.

15           And finally, Your Honor, with respect to Count 3,

16   the theft of government funds.  From September 20, 2013 to

17   October 30, 2020, Mr. Stewart received benefits from the VA.

18   Those benefits were artificially increased based on a false

19   application that Mr. Stewart had submitted to the VA.  And

20   specifically, beginning on or about September of 2013 through

21   November 16, 2013, Mr. Stewart submitted documents to the

22   Veterans Administration in support of a claim for benefits --

23   educational benefits and medical benefits.

24           In support of that, Mr. Stewart submitted a DD214

25   form, which is a form that the Department of Defense and the

United States of America v. Stewart

17

1   VA uses to determine somebody's service in the United States

2   military.  Here, Mr. Stewart falsely claimed that he served in

3   the United States Marine Corps.  Mr. Stewart did serve in the

4   United States Air Force, but he never served in the United

5   States Marine Corps.  On that form, which was simply a forged

6   and fraudulent form, he indicated that he had served, he had

7   obtained the rank of Corporal, and that he received numerous

8   accommodations and awards as part of his Marine Corps service.

9   That simply wasn't true.  But based on the false and

10  fraudulent 214 form, the VA did approve his claim for

11  benefits.  And over the course of several years, the total

12  amount of benefits that Mr. Stewart received, based on just

13  the false Marine Corps information, as opposed to his service

14  in the Air Force, totaled approximately $73,722.45.

15          THE COURT:  Thank you, sir.

16          MR. FITZPATRICK:  And obviously, Your Honor, if the

17  matter had gone to trial, the United States would have proven

18  those facts and others beyond a reasonable doubt through

19  admissible and credible evidence.

20          THE COURT:  Thank you, sir for that presentation.

21          Mr. Stewart, you may stand, again, sir.  I have

22  before me a document entitled, "Statement of Facts" which is a

23  more significant overview of the allegations that the

24  government alleges that support the charges against you.

25          Did you, in fact, sign this form, sir?

United States of America v. Stewart

18

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Did you read it before you signed it?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And, again, if you had any questions

5   regarding the Statement of Facts, Mr. Jenkins answered those

6   questions for you.

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  I'll direct that the Statement of Facts

9   be made a part of the record in this matter.

10          Sir, has anyone threatened you or forced you to

11  enter this plea of guilty?

12          THE DEFENDANT:  No, Your Honor.

13          THE COURT:  Have any promises been made to you

14  concerning your plea of guilty?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Do you understand by entering this plea

17  of guilty you cannot refuse to testify potentially against

18  others who may be implicated in your bad acts?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Do you now make any claim that you're

21  innocent of the charges before the Court?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Do you understand that upon your plea of

24  guilty, the Court may accept or reject any agreement that has

25  been made between you and your counsel or any recommendation

─────United States of America v. Stewart─────

19

1    made by the probation department?  Obviously, the Court will

2    consider the arguments of your lawyer and arguments of your

3    counsel.  But do you understand, sir, that ultimately it is up

4    to the Court to decide what the appropriate sentence is in

5    this case?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  And do you understand that if I do

8    something that you disagree with, you would not be entitled to

9    withdraw your plea of guilty?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Sir, are you a citizen of the United

12   States of America?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Do you understand, sir, that if you are

15   not a citizen of the United States of America that there are

16   certain circumstances that might result because of your plea

17   of guilty and that includes the exclusion from admission to

18   this country, the denial of naturalization under federal law,

19   and other adverse immigration consequences.

20             Do you understand, sir, if you are not a citizen of

21   the United States of America?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And do you understand that Mr. Jenkins

24   has no responsibility or obligation to you regarding those

25   circumstances; he is your criminal defense attorney and has no

United States of America v. Stewart

20

1   obligation to you in civil aspects?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  After having discussed the matter with

4   your attorney, do you freely and voluntarily enter this plea

5   of guilty and waive your right to trial by a jury and request

6   the Court to hear all matters of law and fact?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Do you have any questions that you wish

9   to ask the Court before the Court decides to accept your pleas

10  of guilty?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  The Court being of the opinion that the

13  pleas of guilty and waiver of jury trial are voluntarily and

14  intelligently made with an understanding of the nature of the

15  charges and the consequences of said pleas of guilty and

16  waiver, thus, does accept the defendant's plea and waiver and

17  finds the defendant guilty of the charges outlined in the

18  charging documents.

19         Mr. Jenkins, do you have a sentencing date in mind,

20  sir?

21         MR. JENKINS:  No, Your Honor.  Whatever preference

22  the Court has.

23         THE COURT:  I'm going to ask this delicately and I

24  think you'll understand what I'm asking.  Is there any reason

25  for us to carry this out any length of time?

──────United States of America v. Stewart──────
                                                            21

1          MR. JENKINS:  Yes, Your Honor, there is.  If we

2    could have a date, Your Honor, after June.

3          THE COURT:  Does the government have any objection

4    to that?

5          MR. FITZPATRICK:  No, Your Honor.  I would just ask

6    the Court, I do have a trial set, which I am certain is going

7    to go.

8          THE COURT:  Well, you got that crystal ball, we're

9    going to be through the pandemic in June.

10         MR. FITZPATRICK:  I don't.  But based on Judge

11   Ellis's comments, I would be amazed if it doesn't.  It is not

12   until the middle of July.  So I would just ask the Court, if

13   possible, to avoid the last two weeks of July.

14         THE COURT:  Well, Judge Ellis is the sage, and so

15   I'm always going to defer to the sage and I'm going to

16   immediately go up and talk to him about the news that he has

17   that apparently that I don't have, that we're going to be back

18   to normal in June.

19         MR. FITZPATRICK:  Your Honor, if you could just keep

20   me as an anonymous informant.

21         THE COURT:  I will say that I got it from a source.

22         MR. FITZPATRICK:  Thank you, Your Honor.

23         THE COURT:  All right, sir.  Mr. Jenkins, how about

24   June 16?

25         MR. JENKINS:  Your Honor, that's agreeable.

United States of America v. Stewart

22

1          THE COURT:  Okay.  Is that agreeable to the

2    government?

3          MR. FITZPATRICK:  Yes, Your Honor.

4          THE COURT:  June 16, and that will be at 11:00 a.m.

5          Mr. Jenkins, I'll hear from you on bond.

6          You may have a seat, Mr. Stewart.

7          MR. JENKINS:  Your Honor, we would ask that the

8    Court set conditions of release in this matter.

9          Mr. Stewart is a man who is free of any prior

10   convictions whatsoever.  Mr. Stewart has been aware of the

11   government's investigation of this matter.  In fact, he also

12   is the subject of an investigation by the United States

13   Congress, which he's been aware of now for at least nine

14   months.  I represent him in that matter also.

15          So certainly I think that the fact that Mr. Stewart

16   is here before the Court today, having had prior knowledge of

17   the fact that he was the subject of not one but two very

18   significant investigations that could result in him being

19   deprived of his liberty, but yet and still he appeared here

20   today, should speak volumes to the Court as to whether or not

21   he is a flight risk.

22          THE COURT:  Where is his passport?

23          MR. JENKINS:  Mr. Stewart, do you have a passport?

24          THE DEFENDANT:  I do have a passport.

25          MR. JENKINS:  Do you have possession of it?

———————United States of America v. Stewart———————

23

1              THE DEFENDANT:  No, sir.  I don't have it here.

2              MR. JENKINS:  Your Honor, Mr. Stewart currently

3    resides in the state of Alabama.  And that's why he's

4    representing to the Court that he does not have his passport

5    with him at this time.  If so certainly directed by the Court,

6    Mr. Stewart can either surrender his passport to counsel and I

7    can assure that it either remains in my law firm safe, or if

8    the Court would feel more comfortable that it could be

9    submitted to pretrial services.

10             THE COURT:  Your client has a question.

11             (Counsel and defendant confers.)

12             MR. JENKINS:  Thank you, Your Honor.

13             Your Honor, Mr. Stewart advises me that in

14   preparation for today and his contacts with the pretrial

15   services officer, he was instructed that in the event that the

16   Court did set conditions of release that he would be directed

17   to turn the passport in in Alabama where he would be

18   supervised.

19             THE COURT:  Okay.

20             MR. JENKINS:  And he's prepared to do that.

21             THE COURT:  All right.  What's the government's

22   position?

23             MR. FITZPATRICK:  Your Honor, the United States have

24   no reason to believe that an unsecured bond is not appropriate

25   in this case.  As the Court mentioned, the only special

──────United States of America v. Stewart──────

24

1  condition we would ask is that the passport be surrendered to

2  pretrial services.

3          THE COURT:  All right.

4          Mr. Stewart, I'm going to take a chance on you.  The

5  facts, as they were presented by the government, were very

6  fair.  I know Mr. Jenkins has suggested circumstances that

7  might sort of offset what I believe is bad conduct on your

8  part.  Particularly, I was pleased to hear that you didn't get

9  the $30 million associated with the N95 masks.  And from the

10 government's own presentation of the evidence, and I thought

11 that they were very fair to you in that presentation of the

12 evidence, it seems like to me that you were, as we used to

13 say, "robbing Peter to pay Paul," you were chasing those masks

14 and you thought that the PPE loan would get you to the point

15 where you could actually get the mask which would allow you to

16 get the contract.  So it just became, again, a snowball

17 rolling down a hill that got worse, and worse, and worse.

18         As I said, I was inclined, after reading the

19 information made available to the Court, prior to your hearing

20 today, to lock you up, because I think what you did is not

21 only disadvantageous to your position as a citizen of the

22 United States, but you're essentially robbing from people, or

23 stealing from people, not robbing, stealing from people who

24 need these loans to make it work in society.  People who are

25 struggling with their mortgages, people who are trying to put

—United States of America v. Stewart—

25

1  food on the table, feed their families, these are

2  opportunities for these people to actually withstand the

3  stresses associated with this pandemic and you were stealing

4  from them and stealing from everybody in this room.

5          But I think I understand what got you in trouble so

6  I'm going to give you the break.  We're going to keep you on

7  the same conditions that existed.  He's not on pretrial

8  services?

9          So we're going to go ahead and put him on pretrial

10  release.  I'm going to let the probation office develop the

11  standard conditions of pretrial release that he's expected to

12  adhere to.  I'm also going to direct that he surrender his

13  passport to you Mr. Jenkins.  I don't want the probation

14  department in Alabama to have it, I want you to have it

15  because I know you, and I'll expect that if there are any

16  problems that we'll be made aware of that.

17          Sir, you need to do what you need to do in the

18  interim to put yourself in the best position you can next to

19  your sentencing date.  You need to clean up the act as best

20  you can.  I did notice that in your statement you do have some

21  financial wherewithal and so it's probably best that you do

22  what you can to direct that to satisfaction of the obligation

23  that you have financially to these cases.  So you need to do

24  what you need to do, and I'm sure Mr. Jenkins will advise you

25  as to how to put yourself in that best position.

───────United States of America v. Stewart───────

26

1          Do you have any questions, sir?

2          MR. JENKINS:  Yes, Your Honor.

3          Your Honor, with respect to the conditions of

4   release, as I noted, I'm also am engaged to represent

5   Mr. Stewart in a matter that's being investigated by a

6   subcommittee of the United States House of Representatives.

7   Mr. Stewart and I are in engaged in some negotiations that may

8   lead to Mr. Stewart providing some cooperation with their

9   efforts.  So there may be a need for him to travel from

10  Alabama not just to this district but also to the District of

11  Columbia.

12         And we would -- we would ask that the Court permit

13  him to do so also.

14         THE COURT:  All right.  Let's do it this way.  Any

15  travel that he needs to do, other than to the District of

16  Columbia, the Washington, D.C. metropolitan area, which,

17  obviously, includes this court, needs to be specifically

18  approved by the Court, but the request that you've made in the

19  context of his travel to take care of his obligations

20  professionally, the Court will allow that to happen.  But any

21  other travel, he needs to get it approved by the Court in

22  advance of him doing it.

23         MR. JENKINS:  Understood, Your Honor.  Thank you.

24         THE COURT:  All right.  We have some forms that your

25  client is going to need to sign.  I'm sure Mr. Jenkins you can

─────United States of America v. Stewart─────
                                                           27

1    go over these forms with him.

2                 (A pause in the proceedings.)

3                 THE COURT:  Do we need to direct him to the

4    probation department?

5                 THE PROBATION OFFICER:  Yes, Your Honor.

6                 MR. FITZPATRICK:  I was going to ask the Court as

7    well if you could ask Mr. Stewart to proceed to the marshals

8    at some point today for his probation process.

9                 THE COURT:  Mr. Jenkins, I'm sure that you can help

10   your client accomplish that objective.

11                MR. JENKINS:  Yes.

12                (A pause in the proceedings.)

13                THE DEPUTY CLERK:  Did you file the information for

14   this case?

15                MR. FITZPATRICK:  Yes, I have a copy.

16                THE DEPUTY CLERK:  Was it in the -- yeah, I don't

17   have it.

18                (Discussion off the record.)

19                THE COURT:  Mr. Jenkins, the criminal information is

20   being handed up to be made a part of the record in this

21   matter.  I'm sure you don't have any objection to that, sir.

22                MR. JENKINS:  No objection, Your Honor.

23                THE COURT:  Thank you.  I'll direct that it be made

24   a part of the record.

25                Is there anything else we need to do?

─────Tonia M. Harris OCR-USDC/EDVA 703-646-1438─────
                EASTERN DISTRICT OF VIRGINIA

28

1          MR. FITZPATRICK:  No, Your Honor.

2          MR. JENKINS:  No, Your Honor.

3          THE COURT:  All right, sir, Mr. Jenkins is going to

4    direct you to the United States Marshal's Office so that you

5    can then go to the probation department so we can make sure

6    that we have information necessary to engage in pretrial

7    supervision.  So make sure that you follow Mr. Jenkins's

8    instructions, sir.

9          Do you have any questions?

10         THE DEFENDANT:  No, Your Honor.

11         THE COURT:  Very good.

12

13            **(Proceedings adjourned at 1:05 p.m.)**

14

15

16

17

18

19

20

21

22

23

24

25

EASTERN DISTRICT OF VIRGINIA

1                    CERTIFICATE OF REPORTER

2

3            I, Tonia Harris, an Official Court Reporter for

4    the Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Plea hearing

7    in the case of the **UNITED STATES OF AMERICA versus ROBERT**

8    **S. STEWART, JR.**, Criminal Action No. 1:21-cr-00005, in said

9    court on the 3rd day of February, 2021.

10           I further certify that the foregoing 29 pages

11   constitute the official transcript of said proceedings, as

12   taken from my machine shorthand notes, my computer realtime

13   display, together with the backup tape recording of said

14   proceedings to the best of my ability.

15           In witness whereof, I have hereto subscribed my

16   name, March 14, 2021.

17

18

19

20

21   _____

22   Tonia M. Harris, RPR
     Official Court Reporter

23

24

25

                                                              29