IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT S. STEWART JR,<br><br>Defendant. | Case No. 1:21-cr-005 (RDA) |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The United States of America, by and through its undersigned counsel, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission Guidelines Manual ("Guidelines" or "U.S.S.G."), files this Position of the United States with Respect to Sentencing.

**I.  PROCEDURAL HISTORY**

On February 3, 2021, the defendant, Robert S. Stewart Jr., entered a guilty plea to a three-count Criminal Information charging him with making false statements to the Federal Emergency Management Agency ("FEMA") and the Department of Veteran's Affairs ("VA") in order to obtain lucrative contracts to provide those agencies with much needed personal protective equipment ("PPE") during the early stages of the COVID-19 pandemic, in violation of 18 U.S.C. § 1001 (Count 1); engaging in a wire fraud scheme in which he unlawfully acquired and then misused federally insured loans from Celtic Bank and the Small Business Administration ("SBA"), in violation of 18 U.S.C. § 1343 (Count 2); and theft of government funds by falsely claiming to have served in the United States Marine Corp in order to fraudulently increase his veteran's benefits, in violation of 18 U.S.C. § 641 (Count 3). (Presentence Report "PSR" at ¶¶ 1, 13, 28, 48 and 49).

## II. SUMMARY OF THE UNITED STATES' SENTENCING RECOMMENDATION

The United States has no objections to the Guidelines calculation or factual information contained in the presentence investigation report. The Probation Office accurately calculated the defendant's advisory Guidelines range to be 21 to 27 months' imprisonment. PSR at ¶ 117. After careful consideration of each of the statutory factors enumerated in 18 U.S.C. § 3553(a), the United States recommends that the Court sentence the defendant to 24 months in prison and impose a three-year term of supervised release. Such a sentence would be sufficient, but not greater than necessary, to accomplish the sentencing objectives set forth in 18 U.S.C. § 3553(a).

## III. FACTUAL BACKGROUND

Mr. Stewart's three guilty pleas were predicated on three distinct criminal schemes.

*Count 1: False Statements to FEMA and the VA*

In April 2020, the United States was in the throws of arguably the greatest public health crisis in our Nation's history. COVID-19 was rapidly spreading throughout the country. The economy was essentially shuttered, and much of society was at a stand-still. Hospitalizations and fatalities were increasing by the day. Americans most at risk from the deadly effects of COVID-19 were the elderly, those with pre-existing medical conditions, first responders, and, of course, health-care professionals and hospital workers who were on the front lines battling the pandemic. The best defense against the spread of COVID-19 was the proper use of PPE, including N95 respirator masks. Unfortunately, there was a dire shortage of these critical supplies. Hospital workers, first responders and those in need were left without enough masks and were often required to improvise ways to protect themselves from the spread of the virus. This set off an intense effort at every level of government, including by FEMA and the VA, to locate, purchase and distribute life-saving PPE.

It was in this context, that beginning April 1, 2020, Mr. Stewart, the chief executive officer and sole owner of Federal Government Experts, LLC ("FGE") falsely stated to FEMA and VA procurement officials that he was in possession of N95 respirator masks. Based on Mr. Stewart's false representations, the VA awarded FGE a contract to supply six million N95 masks at a cost of 35 million dollars. These masks were to be distributed to the VA's health care facilities which provide services to approximately 9 million enrolled veterans each year. Mr. Stewart's false claims that he was in possession of N95 masks also induced FEMA to award FGE a contract to supply 500,000 masks at a cost of $3,510,000. PSR at ¶¶ 13-27.

The contracts were awarded to FGE under false pretenses because Mr. Stewart was not in possession of N95 masks. Under the terms of the contracts, Mr. Stewart and FGE were to be paid upon delivery and inspection of the 95 masks. This set off a mad scramble by Mr. Stewart to find 6,500,000 N95 masks within a matter of weeks and in the midst of a worldwide pandemic. Mr. Stewart was, of course, unable to acquire any masks. However, throughout April and the beginning of May 2020, Mr. Stewart made a serious of additional false statements to VA and FEMA officials stating that he was in possession of the masks, including providing photographs of masks he falsely claimed were secured inside an FGE warehouse. These statements were intended to deceive VA and FEMA officials into believing that Mr. Stewart was on the brink of fulfilling the contracts so the agencies would extend the deadlines for delivery. The VA and FEMA ultimately cancelled their contracts with Mr. Stewart and FGE.[1] PSR at ¶¶ 13-27.

---

[1] Because neither the VA nor FEMA ever paid Mr. Stewart for the N95 masks the U.S. Government suffered no financial loss.

*Count 2: PPP and EIDL Loan Fraud*

As set forth in greater detail in the PSR, the Paycheck Protection Program (PPP) and the Economic Injury Disaster Loan Program (EIDL) were government initiatives intended to provide emergency financial resources to businesses suffering from the economic impact of the COVID-19 pandemic. In April and May of 2020, Mr. Stewart fraudulently obtained an $805,000 PPP loan from Celtic Bank and $261,000 loan from the SBA in the name of FGE.[2] The loan applications were materially false in that they overstated FGE's payroll and number of employees and were supported by fraudulent tax documents.[3] In addition, the PPP and EIDL funds could be used for limited business-related purposes. Mr. Stewart unlawfully used a portion of the money for personal expenses. Moreover, Mr. Stewart used some of the money to try to obtain N95 masks in order to fulfill the VA and FEMA contracts. PPP and EIDL funds were intended to be used as emergency resources to keep hardworking Americans employed and businesses from going bankrupt, not as venture capital. By using the EIDL and PPP funds in this manner, Mr. Stewart engineered a way in which a government backed loan helped to finance his attempt to locate and purchase N95 masks just so that he could then sell those masks back to the government at a significant profit. PSR at ¶¶ 28-47.

*Count 3: Theft of Funds from the VA*

In 2013, Mr. Stewart, an Air Force veteran, submitted a fraudulent application to the VA for benefits. The application falsely stated that he had served in the United States Marine Corp and that he had been awarded several military awards and commendations. In support of his

---

[2] On July 23, 2020, Mr. Stewart repaid Celtic Bank $791,507.95. Mr. Stewart repaid this money after he was interviewed by federal agents regarding the circumstances surrounding the awarding of the VA and FEMA contracts.
[3] Number of employees and payroll were two important factors in determining whether a PPP or EIDL loan would be approved and, if so, how much money the applicant would receive.

fraudulent application, Mr. Stewart submitted a forged DD Form 214, which is an official Department of Defense document that certifies a person's release or discharge from active duty. Based on Mr. Stewart's fraudulent application, he received $73,722.45 in excess benefits from the VA between September 2013 and October 30, 2020. PSR at ¶¶ 48-52.

## IV. STANDARDS GOVERNING SENTENCING

As the Court well knows, the sentencing Guidelines are advisory and should be taken into consideration with the 18 U.S.C. § 3553(a) factors in making a sentencing decision. *United States v. Booker*, 543 U.S. 220, 264 (2005); *see also United States v. Kimbrough*, 552 U.S. 85, 90 (2007) (stating that "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence"). In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that the sentencing court should calculate the sentencing Guidelines range, permit the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate," consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors. *Id.* at 49. The Court further instructed that, in the event that the sentencing court decides to impose a variance, the court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* (noting that a "major departure should be supported by a more significant justification than a minor one").

Applying these standards, the Fourth Circuit has concluded that a sentencing court must: "(1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence." *United States v. Simmons*, 269 Fed. Appx. 272, 2008 WL 681764, at *1 (4th Cir. March 11, 2008) (citing *United States v. Pauley*,

5

511 F.3d 468, 473 (4th Cir. 2007)). When "rendering a sentence, the district court must make and place on the record an individualized assessment based on the particular facts of the case." *United States v. Cuthrell*, No. 12-4077, 2012 WL 3643677, *1 (4th Cir. Aug. 27, 2012) (citing *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009)). Ultimately, the court "must state in open court the particular reasons supporting its chosen sentence." *Carter*, 564 F.3d at 328 (quoting 18 U.S.C. § 3553(c)).

Section 3553 states that a court should consider the nature and circumstances of the offense and history and characteristics of the defendant. 18 U.S.C. § 3553(a)(1). In addition, it mandates that a court consider other factors, including the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct." 18 U.S.C. §§ 3553(a)(2)(A) & (B). The sentence should also protect the public from further crimes of the defendant. 18 U.S.C. §§ 3553(a)(2)(C).

## V. THE ADVISORY GUIDELINES RANGE

The United States and the United States Probation Office ("Probation") agree as to the applicable Guidelines in this case. Specifically, the United States and Probation agree to the following:

Count 1, Count 2 and Count 3 are closely related counts and therefore group pursuant to USSG. § 3D1.2(d);

The applicable Guidelines provision is § 2B1.1, and the base offense level is 7. USSG. § 2B1.1(a)(1);

Because the loss amount is more than $250,000 but less than $550,000, the offense level is increased by 12. USSG. § 2B1.1(b)(1)(G);

This results in an adjusted offense level of 19.

Further, pursuant to the terms of the plea agreement, the parties agree that Mr. Stewart assisted the United States in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently. As a result, it is the position of the United States that Mr. Stewart qualifies for a two-level decrease in the offense level pursuant to U.S.S.G. § 3E1.1(a), and the United States hereby moves the Court to award an additional one-level decrease in the offense level pursuant to U.S.S.G. § 3E1.1(b).

The above Guidelines calculation results in a total offense level of 16. After determining the defendant's criminal history falls within category I, Probation properly calculated the advisory Guideline range to be 21 to 27 months' imprisonment. PSR at ¶¶ 71-81, 84-85, 116-117.

## VI.   18 U.S.C. § 3553(a) FACTORS

Once the Court has properly calculated the Guidelines range and ruled upon all departure motions,[4] the Court must then consider the factors identified in 18 U.S.C. § 3553(a) to fashion a reasonable sentence. *Gall v. United States*, 552 U.S. 38 (2007). Here, the 3553(a) factors discussed below support a sentence of 24 months imprisonment.

### A.   Nature and Circumstances of the Offense and History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

Each of Mr. Stewart's crimes were predicated on premeditated lies designed to enrich himself. Mr. Stewart lied to the VA and FEMA to obtain lucrative contracts. Mr. Stewart lied to Celtic Bank and to the SBA to receive government secured loans and then misused the proceeds

---

[4] There are no departure motions before the Court.

of the loans. Mr. Stewart lied to the VA about serving in the Marines in order to fraudulently increase his veteran's benefits. The breadth and the scope of Mr. Stewart's fraudulent conduct is shocking. His lies to the VA about his military service began in 2013 and continued until he was caught in 2020. Mr. Stewart can count among the victims of his criminal deception Celtic Bank, FEMA, the SBA, and the VA (twice).

These three offenses do not arise out of a common set of facts. Each of these crimes constitutes a separate and independent decision by Mr. Stewart to try to enrich himself through criminal means. For these reasons, the nature and circumstances of Mr. Stewart's three offenses warrant a 24-month term of imprisonment.

### B. Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide a Just Punishment (18 U.S.C. § 3553(a)(2)(A))

Each of Mr. Stewart's offenses are quite serious and a 24-month term of imprisonment is necessary to promote respect for the law and to provide a just punishment.

First, during a national health emergency in which there was widespread suffering and severe economic hardship, Mr. Stewart chose to lie to the VA and FEMA about his ability to provide N95 masks. These masks were in exceedingly short supply and were an essential defense against the spread of COVID-19. Mr. Stewart's false statements induced the VA and FEMA to award him lucrative contracts to supply these crucial protective masks. Obtaining federal contracts through deception is by its very nature a serious offense, but for Mr. Stewart to do so under such grave national circumstances and knowing that he had little or no realistic prospect of providing the life-saving PPE makes this a particularly aggravated case.

Second, the financial assistance provided by the PPP and EIDL programs was intended to be a lifeline to businesses and their employees suffering from the economic impact of COVID-19. The fact that Mr. Stewart used these federal programs to pay personal expenses and to enrich

himself constitutes an inherently serious offense and demonstrates a clear lack of respect for the law.

Third, the fact that Mr. Stewart lied to the VA to fraudulently increase his veteran's benefits, forged documents to support his fraudulent claim, and executed the crime over a period of seven years is on its face a very serious offense. When the Court considers the essence of the fraud which is a lie about having served honorably in the United States Marine Corp, this strait forward scheme becomes an even more offensive and insulting crime.

    **C.    To Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))**

The requested sentence of 24 months imprisonment is also important to afford adequate general deterrence to criminal conduct. This is particularly true with regard to ensuring the integrity of the procurement process, especially during times of great national hardship. The intense and immediate need for PPE clearly created great challenges for federal agencies seeking to quickly secure those vital supplies. These circumstances also presented opportunities for criminal profiteers like Mr. Stewart to compromise the procurement process. A 24-month period of incarceration sends a clear message that materially false statements in acquiring essential contracts is a serious criminal offense and will be thoroughly investgated.

**VII.    RESTITUTION, FORFIETURE AND A POTENTIAL PUNATIVE FINE**

Prior to sentencing, Mr. Stewart paid his total restitution obligation of $348,714.50 in-full. Specifically, with respect to the fraudulent loan scheme (Count 2), Mr. Stewart repaid the SBA $261,500 and Celtic Bank $13,492.05, and with regard to the theft of VA funds (Count 3), Mr. Stewart repaid the VA $73,722.45. PSR at ¶ 65.[5]

---

[5] No restitution is due as to Count 1 because the U.S. Government suffered no financial loss.

Given the fact that Mr. Stewart has paid his restitution obligation in-full, the United States is not seeking an order of forfeiture.

Finally, in light of Mr. Stewart's current financial condition and his apparent inability to pay, the United States is not requesting the Court impose a punitive fine. PSR at ¶ 114.

## VIII. CONCLUSION

For the foregoing reasons, the United States requests the Court sentence the defendant to 24 months in prison and impose a three-year term of supervised release. Such a sentence would be sufficient, but not greater than necessary, to accomplish the sentencing objectives identified in 18 U.S.C. § 3553.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:       _____/s/_____
William Fitzpatrick
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax:    (703) 299-3868
William.fitzpatrick@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of that electronic filling (NEF) of the foregoing to the attorney of record for the defendant.

                                                        /s/
William Fitzpatrick
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax:    (703) 299-3768
William.fitzpatrick@usdoj.gov